```
1              IN THE UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF WEST VIRGINIA
2                        AT CHARLESTON

3   -------------------------------x
                                    :
4   UNITED STATES OF AMERICA,       :
                                    :
5        v.                         :   CRIMINAL NO. 2:05-00155
                                    :
6   PATRICIA BURTON,                :   JULY 22, 2010
                                    :
7            Defendant.             :
    -------------------------------x
8

9                  TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.
10                UNITED STATES DISTRICT JUDGE

11

12  APPEARANCES:

13  FOR THE UNITED STATES:      AUSA R. GREGORY McVEY
                                AUSA PHILIP WRIGHT
14                              U.S. Attorney's Office
                                P.O. Box 1713
15                              Charleston, WV  25336

16  FOR THE DEFENDANT:          TROY N. GIATRAS
                                118 Capitol Street, Ste 400
17                              Charleston, WV  25301

18  PROBATION OFFICER:          LEE CUEVA
                                U.S. Probation Office
19                              300 Virginia Street East
                                Charleston, WV  25301
20

21  COURT REPORTER:             BARBARA STEINKE, RMR
                                Post Office Box 75025
22                              Charleston, WV  25375
                                (304) 347-3151
23

24  These proceedings were reported with use of a stenographic
    machine and transcribed with use of computer-aided
25  transcription.
```

1                    P R O C E E D I N G S          1:34 p.m.

2            THE CLERK:  The case before the court is the *United*

3    *States of America versus Patricia Burton*, Criminal Number

4    2:05-00155.  Would counsel note their appearance for the record,

5    please.

6            MR. McVEY:  Greg McVey and Phil Wright on behalf of the

7    United States.

8            MR. GIATRAS:  Troy Giatras on behalf of Patricia Burton

9    who is also present in the courtroom.

10           THE CLERK:  Would the defendant please stand and raise

11   your right hand.

12       (The defendant was sworn.)

13           THE COURT:  This hearing is a continuation of the

14   sentencing hearing held some four years ago.  At that time, a

15   number of matters were taken into account and the court made

16   rulings on them following findings, and it seemed to me that the

17   court may have dealt with the objections of the defendant to the

18   report, but I am not certain of that by any means, and would ask

19   whether or not, Mr. Giatras, there are any other objections to

20   the probation department's presentence report in this case.

21           MR. GIATRAS:  No, Your Honor.

22           THE COURT:  Does the government have any?

23           MR. McVEY:  No, Your Honor.

24           THE COURT:  One of the things that the court does wish

25   to do is to revisit its ruling regarding the obstruction of

1   justice component, and then, after having done so, make the

2   calculations that the court believes are appropriate in the

3   matter, notwithstanding the calculations that were made in that

4   respect at the hearing in 2006.

5       In that respect, with regard to count one, the court having

6   found that the cross-reference by the United States Sentencing

7   Guideline Section 2D1.1(d)(1) to United States Sentencing

8   Guidelines Section 2A1.1 applies, the base offense level on

9   count one is deemed to be 43; it being further noted that

10  obstruction of justice consisting of what is count two was

11  deemed inappropriate on count one inasmuch as the defendant

12  stands convicted of that very same offense that is said to

13  constitute the obstruction of justice as to count one.  Hence,

14  the adjusted offense level for count one is 43.

15      Just one moment, please.

16      With respect to count two, the court finds that for an

17  offense under Title 18, United States Code, Section 924(j)(1),

18  the guidelines direct application of United States Sentencing

19  Guideline Section 2A1.1, resulting in a base offense level of

20  43.  When two points are added for obstruction of justice having

21  to do with that which comprised the court's findings of

22  destruction of evidence at the prior hearing, and coupling that

23  with the further supporting factor that has later been found in

24  testimony of the defendant that she assisted in carrying the

25  body to the grave, the court concludes that the adjusted offense

1   level becomes that of 45.

2        Pursuant to United States Sentencing Guideline Section

3   3D1.4, two levels are added inasmuch as one unit is applied to

4   what is said to be the group with the highest offense level and

5   an additional unit is added for each group that is equally

6   serious or, as here, from one to four levels less serious.  As a

7   consequence, two units result in a two-level increase, bringing

8   the adjusted offense level of 47.

9        Taking into account a three-level decrease for acceptance of

10  responsibility, the total offense level is 44, which is, of

11  course, under the guidelines, capped at 43, and when coupled

12  with a criminal history category of I results in a guideline

13  range of life.

14       The court also notes that with respect to count two, there

15  is a statutory mandatory minimum of ten years, and that count

16  two is to run consecutively to the sentence imposed on count

17  one.

18       Let me ask whether or not the parties have any objection to

19  the court's calculations as just stated.

20            MR. McVEY:  May I have a moment, Your Honor?

21       (Pause.)

22            MR. McVEY:  Your Honor, we have no objection to those

23  calculations, and I'm not so sure that the court mentioned the

24  twenty year cap with regard -- the statutory cap with regard to

25  count one.

1            THE COURT:  That's understood.

2            MR. McVEY:  With that, we have no objection.

3            THE COURT:  Thank you.

4            MR. GIATRAS:  No objection, Your Honor.

5            THE COURT:  Thank you.

6       Is there anything remaining prior to hearing counsel and the

7    defendant at the bench, other than the motion for substantial

8    assistance that has been filed by the government?

9            MR. McVEY:  No, Your Honor.

10           MR. GIATRAS:  No, Your Honor.

11           THE COURT:  And I would ask, Mr. McVey, if you could

12   elaborate on that motion at this time.  I believe the motion is

13   restricted in one respect, and that is, that there is to be no

14   penetration of the mandatory minimum.

15           MR. McVEY:  That's correct.

16           THE COURT:  And beyond that, if you would inform the

17   court further with regard to both the basis for the motion and

18   acquaint the court as best you know of what risk or hazard was

19   involved in rendering the assistance.

20           MR. McVEY:  Yes, Your Honor.

21       I'll just go through the five particular factors.

22       The first one with regard to the significance and usefulness

23   of the defendant's assistance, this defendant was the first to

24   come forward with at least the closest true story of what

25   happened to Carla Collins.  She was the only direct link to

1  defendant Lecco and the murder of Collins itself, and then other

2  witnesses and circumstances provided corroboration of her story.

3  Simply put, but for this defendant, at least in terms of the way

4  the investigation went, defendant Lecco and defendant Friend

5  would have never been charged and then later convicted without

6  the help of this defendant.

7      Additionally, Friend would have, as we view it, never pled

8  guilty had not Ms. Burton testified at the first trial.

9  Ms. Burton did not testify at the second trial obviously.  The

10 United States made a decision not to call her once defendant

11 Friend testified, but, again, we would not have had defendant

12 Friend's testimony without cooperation from Ms. Burton.

13     As to the truthfulness, completeness, and reliability of the

14 information she provided, at first this defendant was not

15 truthful with law enforcement about different aspects of her

16 involvement in the murder.  She initially stated one time she

17 had hit Carla Collins in the head with a rock and later stated

18 that she had not hit her in the head with a rock.  And, of

19 course, one of the causes of death of Carla Collins was a

20 fractured skull.  She still maintains to this day she did not do

21 that.  There were other details about the murder itself that

22 were inconsistent.  However, once this defendant pled guilty and

23 began cooperating, it's the United States assessment that she

24 did the best she could to cooperate.  She did the best she could

25 to provide accurate details of her involvement and the

1    involvement of other people in the case.

2         The court is aware through testimony and particularly

3    cross-examination of Ms. Burton, that she does suffer some

4    mental impairment, and that mental impairment affects her

5    memory, affects her ability to relate details.  So our

6    assessment is that she did her best to be truthful and was of

7    significant help in that regard.

8         In terms of the nature and extent of her assistance,

9    obviously she testified against defendant Lecco and Friend at

10   the first trial.  She was subject to lengthy cross-examination

11   regarding her psychiatric or psychological and mental

12   impairment, her intelligence, her drug problems, and underwent

13   that cross-examination in assisting the United States.

14        With regard to any injuries suffered or risk of injury, she

15   was initially frightened to tell the truth to the agents as the

16   case was being investigated.  She relates that she was concerned

17   about repercussions from Valeri Friend initially.  The court may

18   recall that when this defendant testified at the first trial,

19   she was very hesitant, particularly during the first part of her

20   direct examination.  She related to us later in trial prep for

21   the second trial that she was very nervous because defendant

22   Lecco was in the room, that she felt intimidated and frightened

23   by him.

24        Beyond those feelings, we're not aware of any particular

25   threats that have been made to her, but she did undergo that

1   fear both of Friend and of Lecco.

2       Then with regard to the timeliness of her assistance, as I

3   stated, she did not initially tell the truth to the

4   investigating agents.  However, she was the first person to

5   begin cooperating, and, once charged, became a significant

6   witness against both Friend and Lecco.

7       So based upon those factors, the United States does move or

8   filed this motion for substantial assistance on her behalf.

9           THE COURT:  Thank you.

10      And I believe that perhaps you've covered the risk factor as

11  well?

12          MR. McVEY:  Yes, Your Honor.

13          THE COURT:  Thank you.

14      Mr. Giatras, do you have anything to add?

15          MR. GIATRAS:  Nothing to add with respect to what has

16  occurred in that part of the case, Your Honor, but I do want to

17  indicate also that for the last almost five years, Mrs. Burton

18  has been either at the South Central Regional Jail or one of the

19  regional facilities, and most recently has been in a pod with

20  Valeri Friend and has maintained a distant relationship of

21  making sure not to get close by with her at all under those

22  circumstances or any circumstances, and has never had a problem

23  out there during the five years at any of the facilities that

24  she has been at thankfully, and she has maintained, learned to

25  live like that and maintain herself in a very segregated manner.

1    So we do bring that to your attention also.

2            THE COURT:  And anything further on the motion for

3    substantial assistance?

4            MR. GIATRAS:  No, Your Honor.

5            THE COURT:  Thank you.

6      Let me ask also as to whether or not the government has

7    inquired of Tina Collins in particular and anyone else who is a

8    member of the family that would be deemed a victim in this

9    matter as to whether that individual or those individuals wish

10   to be present for the sentencing hearing today and make any

11   statement.  The court notes that at the prior hearing, Tina

12   Collins did appear and the court received her statement and I

13   would welcome hearing from her again, but I would simply ask the

14   government whether a notice has been given and is there anyone

15   present who wishes to speak.

16           MR. McVEY:  Your Honor, notice has been given actually

17   on several occasions, one by letter in early June and then we

18   have had follow-up conversations with her up until I believe as

19   late as yesterday, also with Ms. Collins' daughter and one of

20   her sons.  Her other son is currently incarcerated.  All have

21   indicated they did not wish to appear today, and Ms. Collins

22   specifically stated she would stand on the information provided

23   to the court at the prior hearing.

24           THE COURT:  Very good.  Is it also the case that there

25   is no request for restitution?

1          MR. McVEY:  If I may have a moment, Your Honor.

2      There were the burial expenses, Your Honor, which were

3  mentioned.  I have those figures, Your Honor.  There's

4  reimbursement for the West Virginia Department of Health and

5  Human Services for the victims fund there for burial expenses.

6  In addition, Ms. Collins' husband, Alfred Collins, paid 250

7  dollars for an urn to hold Carla Collins' ashes.  However, both

8  Mr. and Mrs. Collins indicated they did not wish restitution for

9  the urn itself.  So for any out-of-pocket expenses for them

10 would be the 250 dollars.

11         THE COURT:  And so, I understand there is no request

12 for payment to anyone in the Collins' family.

13         MR. McVEY:  That's correct.

14         THE COURT:  But did you say that there was some

15 indication of another request that is to be dealt with?

16         MR. McVEY:  Yes, the victim -- the Crime Victims Fund,

17 West Virginia Department of Health and Human Services, there was

18 an expense of 1250 dollars for burial expenses for Carla Collins

19 or funeral expenses, rather.

20         THE COURT:  What is the purpose of it again?

21         MR. McVEY:  Funeral.

22         THE COURT:  Funeral and burial, which is it?

23         MR. McVEY:  Well, she was not actually buried, she was

24 cremated, so cremation and funeral expenses.

25         THE COURT:  Funeral and cremation expenses are 1250

1   dollars?

2           MR. McVEY:  Yes.

3           THE COURT:  And that was a cost that was incurred by

4   the Department of Health and Human Resources of the State of

5   West Virginia?

6           MR. McVEY:  Yes, Your Honor.

7           THE COURT:  Is there any monetary claim than that?

8           MR. McVEY:  No.

9           THE COURT:  And let me ask if there is any objection

10  from the defendant that that monetary claim be imposed, the

11  court expecting that in the normal course of events, it would be

12  imposed jointly and severally with others.

13          MR. GIATRAS:  No objection.

14          THE COURT:  The court would expect to do so.

15      Do the parties have anything further before coming to the

16  bench for sentencing?

17          MR. McVEY:  No, Your Honor.

18          THE COURT:  Mr. Giatras, anything further?

19          MR. GIATRAS:  No, Your Honor.

20          THE COURT:  If the parties would come forward, please.

21      Mr. Giatras, do you see any reason why sentence should not

22  now be imposed in this matter?

23          MR. GIATRAS:  No, Your Honor.

24          THE COURT:  And do you, Ms. Burton, see any reason why

25  sentence should not now be imposed in your case?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Mr. Giatras, have you anything you'd wish

3     to say in Ms. Burton's behalf?

4          MR. GIATRAS:  Very briefly.  Your Honor, certainly the

5     loss to the Collins' family is immeasurable and irrevocable, and

6     Patricia understands unfortunately too late those circumstances

7     and those actions.  She has had significant time to reflect upon

8     it.  Five years under the conditions that she has lived in,

9     certainly not as mitigation for what she did, but certainly an

10    ability to be able to concentrate on what her actions have

11    caused, and caused not only to herself, which is not even

12    secondary but probably the last concern of hers, but what it has

13    caused to Carla Collins' family and to her own family, along

14    with, she understands, the birthdays, holidays, and the special

15    events that the Collins' family is going to miss and that her

16    family will miss without -- obviously without Patricia.

17        Again, not an excuse for and certainly very little in

18    mitigation of what actually was Patricia's role in the fact that

19    another life has been taken.  So there's no excuse for that.

20    There is very little mitigation that can ever be offered for

21    that.

22        In this case there is, though, some mitigation, and the

23    mitigation for maybe some of the reasons why -- how it came

24    about, very slightly, with respect to her psychological

25    condition beforehand, but not as an excuse for why it happened,

1    but maybe why she was -- she placed herself in the circumstances

2    that caused it to happen.

3        Secondly, the mitigation with respect to how she has

4    developed afterwards and her ability to be able to at least lend

5    some perspective for herself, how her life has to be different,

6    how it will be different.  She understands that the court will

7    impose a lengthy sentence certainly, because any day is a

8    lengthy sentence, but she knows that she will have even more

9    time to reflect on it and she has to make changes.

10       For the last five years, she has been unfortunately

11   incarcerated in a few regional jails, so she has not had the

12   full ability to be able to present her level of remorse in

13   showing that she can better herself by getting either a GED or

14   taking some classes to show her participation as, again, not a

15   normal citizen, but certainly as somebody who wants to be caring

16   and productive and give back something because she did take a

17   life and she understands that that is the ultimate thing that

18   she took, but she has tried.  And because of the fact that you

19   move from regional jail to regional jail, it's difficult to

20   enroll in some classes and complete them.

21       She does in a -- in a unique sense look forward to the

22   sentence because it will finally put this chapter of her life

23   behind her.  It will allow her then some stability to know that

24   she has to atone for those losses that she caused, and that she

25   can then try to develop a sense of being able to give back to

1    those probably within the jail for the life that she took and

2    hopefully change it for the better for herself and for others

3    that come in front of her.

4        She also has understood the ravages of drugs and alcohol,

5    and what that causes, not only in the community that she lives,

6    but the community that she lives in now.  For the last five

7    years, she is one of the longest serving persons, I guess, that

8    has been at the South Central Regional Jail or in the regional

9    jail system.  What that has caused her to see was the massive

10   amount of turnover and repeats that come and go, obviously in

11   the woman's pods particularly, of individuals with drug charges

12   and drug addiction and drug abuse.  Having recognized that,

13   that's her goal hopefully in jail to try to make whatever little

14   change that she can for others because she was able to see that.

15   Again, a unique perspective, but certainly one that was caused

16   by the circumstances that she placed herself into.

17       For those reasons, Your Honor, and obviously everything

18   apparent to the court who watched both trials in this matter and

19   has extensively reviewed the record, not only of the victim's

20   family and their circumstances, but also the codefendants and

21   the entire case with that knowledge, we ask the court for a

22   reasonable sentence that will allow for both punishment and for

23   rehabilitation and for a chance for Ms. Burton to be able to

24   reunite with her family at a decent age, with the full

25   understanding that we know that Carla Collins cannot and her

1  family will not be able to with her.

2      Thank you, Your Honor.

3          THE COURT:  Thank you.

4      Mr. McVey, do you or Mr. Wright have any comment on behalf

5  of the government?

6          MR. McVEY:  Nothing beyond what we've already stated,

7  Your Honor.

8          THE COURT:  Thank you.

9      Ms. Burton, have you anything you'd wish to say in your own

10  behalf?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Please go ahead.

13          THE DEFENDANT:  As I stand here today, I want to

14  apologize on behalf of the people's lives I have interrupted,

15  most of all to the Collins' family.  There is nothing in words

16  that I can say to ease your pain and suffering.  I have come to

17  realize all my mistakes and hurt I have caused from all of this.

18      I also want to apologize to you, Your Honor, and your courts

19  for all the trouble I have put them through.

20      I want to apologize to my family who I have taken so much

21  from as a mother and a grandmother and a friend.  I have missed

22  so much in their lives because of my misjudgment.

23      These are things that I can never take back or regain in

24  life, but at the same time I have learned by my mistakes

25  greatly.  I am still trying to cope with these problems.  I live

1    with the regret every day of my life.  And as I know, the

2    victim's family does also.

3        So, Your Honor, I'm asking you to please show mercy on me

4    today.

5            THE COURT:  Thank you, Ms. Burton.

6        Ms. Burton, the offense in which you engaged is one that you

7    had several opportunities to stop.  Certainly you had several

8    opportunities to stop your own involvement.  Your role begins

9    with your employment with Mr. Lecco, involved as it was in the

10   drug trade, and continued with his request of you to seek out

11   Carla Collins, and that in doing so, that you first engaged

12   Valeri Friend to take care of Carla.  You contacted Valeri

13   Friend and engaged her to do just that.

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  In addition, Mr. Lecco supplied you with

16   the weapon or weapons --

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  -- that were used, at least one of which

19   was a loaded firearm which you also made available --

20           THE DEFENDANT:  Yes.

21           THE COURT:  -- to Valeri Friend.  And then the two of

22   you and another set about to lure Carla Collins to a spot,

23   through the use of drugs on several occasions in the same

24   evening, where the deed could be carried out.

25       At the scene, only you and Valeri were in the trailer with

1    Carla Collins.

2            THE DEFENDANT:  Yes.

3            THE COURT:  A shot was fired and then another and

4    possibly still another.  It's not clear who it was that fired

5    the first shot.  That was a matter in dispute.  You say you

6    didn't fire it; another says you did.  It's a bit of a guess,

7    but it appears it was at that point after the first shot that

8    you left the trailer.

9            THE DEFENDANT:  Yes.

10           THE COURT:  And it was perhaps at that point that

11   another shot rang out, the second one.  And apparently before

12   you left, the rock that was requested by Valeri Friend was

13   delivered through the window, and you were there to that point.

14           THE DEFENDANT:  Uh-huh.

15           THE COURT:  You and the other individual apparently

16   retreated to the vehicle that was driven in the ditch and was

17   there for somewhere between twenty minutes and two hours, it

18   isn't clear how long it was before the vehicle was pulled out of

19   the ditch, while Valeri remained within the trailer with Carla.

20   After that, you assisted in the cover-up.  The court has made

21   findings on that, and I won't go over them again.

22       In essence, you were in this tragic event from beginning to

23   end.  And so, it is, of course, deserving of substantial

24   punishment.  The guidelines, the advisory United States

25   Sentencing Guidelines that apply in the case, of course,

1  indicate that, that is, you are subject to the maximum under the

2  guidelines for the count one offense and subject to life

3  imprisonment on count two.  And so, the court necessarily takes

4  into account the characteristics of the offense, the unusually

5  serious nature of the offense which involves not only taking the

6  life of another, but the other is one who is attempting to

7  perform a duty or responsibility for the United States acting as

8  a confidential informant to uphold the law rather than to

9  denigrate it.  And so, all of that indicates the exceptional

10  seriousness of the offense in this case.  The court, of course,

11  takes all of that into account.

12      There are other matters that the court takes into account as

13  well.  One is that you've lived your life, except for this

14  event, without any indication that you'd ever been in any

15  criminal difficulty at all.  There are no convictions on your

16  record; and from all that appears, you haven't even been charged

17  with another offense during what is now your forty-one years.

18      The court also takes into account the letters that it has

19  received in your behalf from both family and friends that have

20  shown you otherwise to be a good person.  And that, too, is a

21  matter of note for the court in determining the appropriate

22  sentence.

23      After taking into account all those factors and keeping in

24  mind that this offense is deserving and merits a serious

25  sentence of punishment, the court also recognizes the motion for

1    substantial assistance that has been filed by the government,

2    and recognizes, as the government has stated, that you were the

3    first to come forward.  And I take note of the fact that it, as

4    things progressed, may have been difficult for anyone else

5    equally involved to come forward as rapidly as you did, but

6    nevertheless, you were first, and even Ms. Collins at the

7    hearing four years ago was gracious in thanking you for having

8    done so.  You assisted the government in the first trial in this

9    matter, and, as I understood, stood ready to assist in the

10   second; that, of course, in an effort to bring to justice those

11   who had a role along with you in the offense.  And so, the court

12   recognizes that assistance was substantial and important to the

13   government's ability to successfully prosecute this case.

14       When I take all those matters into account, I recognize that

15   substantial punishment is nevertheless appropriate in the case

16   for this most serious of offenses, and that, as is the

17   expectation from the court, those factors that are set forth in

18   Section 3553(a) must be considered as well, not the least of

19   which is to deter others from engaging in like conduct.

20   Somehow, although I feel the public does need some protection

21   from you, I conclude based on your record, save for this one

22   matter, that you are not likely, if ever you are released, to be

23   involved in another criminal act.

24       And so, in determining the appropriate sentence to impose

25   and recognizing that a substantial sentence indeed is

1    appropriate in this matter, the court has concluded to sentence

2    you to a term of thirty years imprisonment.  You will receive

3    credit, of course, for the time that you have thus far served,

4    and at the conclusion of that term of imprisonment, the court

5    will place you on supervised release for a period of five years

6    on count two; three years, as it were, on count one to run

7    concurrently; and the terms of that supervised release will be

8    the terms and conditions that are standard by standing order in

9    this district.

10        The court recognizes your limited earning capacity, and that

11   such little earnings as you can muster in prison or thereafter

12   should be applied to familial requirements.  And so, the court

13   is not going to impose a fine, or the costs of your

14   incarceration, or the costs of your supervised release.

15        The court does impose the 200 dollar special assessment in

16   this matter, and I'm uncertain as to whether or not that has

17   been paid.  If it has not, then the court will direct it be paid

18   at the rate of 10 dollars a month out of prison earnings once

19   the defendant is at the federal correctional institution where

20   she will be serving the sentence.  And so, the court will note

21   that the first of such payment of 10 dollars can be made on

22   October 1st and continuing on the first day of each month

23   thereafter until that is paid in full.

24        I would ask counsel if you have anything further.

25             MR. GIATRAS:  Your Honor, only the recommendation, if

1   it's possible, to be incarcerated obviously close to West

2   Virginia or in West Virginia, if that's possible given the

3   circumstances and the classification.

4        And also, Your Honor, I know that there was and there had

5   been some drug abuse and some drug issues with Ms. Collins.  I

6   know that a long period of time has elapsed since she has

7   been -- since she has been incarcerated, but if it's possible to

8   at least be considered for and evaluated for that program, we

9   would appreciate that, Your Honor.

10           THE COURT:  The court will make that recommendation as

11   well as the first one.

12           MR. GIATRAS:  Thank you, Your Honor.

13           THE COURT:  Does the government have anything further?

14           MR. McVEY:  Your Honor, just an inquiry as to how this

15   thirty years is divided between the counts.

16           THE COURT:  Well, the statutory mandatory minimum on

17   the second count is ten years.  The court has taken into account

18   both the maximum on count one and the statutory minimum on count

19   two, and fixes a sentence at, as I've indicated, thirty years.

20        Is there anything further to be taken up at this time?

21           MR. GIATRAS:  No, Your Honor.

22           THE COURT:  The court does impose restitution in the

23   amount of 1250 dollars payable to the West Virginia Department

24   of Health and Human Resources, and will direct that it be paid

25   out of prison earnings as well on a similar schedule as that

1    that the court indicated for the payment initially of the

2    special assessment.

3        And I would ask if the government has a motion to dismiss

4    the remaining counts.

5            MR. McVEY:  Yes, counts three and four we move to

6    dismiss, Your Honor.

7            THE COURT:  I take it there is no objection to that

8    motion.

9            MR. GIATRAS:  None, Your Honor, no.

10           THE COURT:  And it is granted.

11       Ms. Burton, the court would note to you that you have

12   fourteen days from this date within which to appeal your

13   conviction and sentence in this case, and if you are without

14   funds with which to prosecute that appeal, the court would

15   appoint counsel for you at the expense of the United States, and

16   the costs of that appeal would otherwise be at the expense of

17   the United States as well.

18           THE DEFENDANT:  Okay.

19           THE COURT:  Good luck to you, ma'am.

20           THE DEFENDANT:  Thank you.

21       (At 2:17 p.m. the hearing was concluded.)

22                            --oOo--

23

24

25

REPORTER'S CERTIFICATE

I, Barbara Steinke, Registered Merit Reporter, do hereby certify that the foregoing proceedings were reduced to writing by me at the time and place therein mentioned, and said proceedings are a true and accurate transcript from my notes.  I further certify that I am neither related to any of the parties by blood or marriage, nor do I have any interest in the outcome of the above matter.

November 4, 2010                    s/Barbara Steinke